SUAREZ, J.,
dissents.
I respectfully dissent. A decision by the Florida Unemployment Appeals Commission can only be reversed if it is not supported by substantial, competent evidence. Thomas v. Precision Response, 920 So.2d 703, 704 (Fla. 3d DCA 2006). Courts must defer to the Florida Unemployment Appeals Commission’s factual findings, but may overturn decisions with erroneous conclusions of law. City of Coral Gables v. Coral Gables Walter F. Stathers Mem’l Lodge 7, 976 So.2d 57, 63 (Fla. 3d DCA 2008). I would affirm the Florida Unemployment Appeals Commission’s (“FUAC”) decision to deny benefits for the summer months as the finding is supported by substantial, competent evidence in the record on appeal and the conclusions of law are not erroneous.
The majority opinion is based on the conclusion that Ms. Duran was a full-time employee of the Miami-Dade County Public Schools (“MDCPS”). The majority concluded that, because she could not be reasonably assured of full-time employment during the second half of the academic year, section 443.091(3)(a), Florida Statutes (2009), did not apply and she would have been entitled to unemployment compensation for the summer months between the academic years.
It is important to note the type of employment Ms. Duran had with the MDCPS. It is undisputed in the record on appeal that Ms. Duran was retained by the MDCPS for the 2008-2009 academic school year as a 3100 interim teacher. Pursuant to Article XIX, Section 2B of the 2006-2009 Collective Bargaining Agreement (“Agreement”) between the United Teachers of Dade, of which Ms. Duran is a member, and the MDCPS, an individual who is hired as a 3100 interim teacher is hired on a temporary basis, and without any expectation of continued employment beyond that approved, or until the position becomes unencumbered, or until the end of the school year. Therefore, whether or not she was used as a full-time teacher during that academic year, she was still a 3100 interim teacher.
In April 2009, Ms. Duran’s 3100 interim position was eliminated. She testified that she then applied for, and began receiving, unemployment compensation benefits. She received these benefits during the school year, but was informed that she was ineligible for the compensation during the summer months pursuant to section 443.091(3)(a). The testimony at the hearing was that she would again be eligible for compensation should the fall school year begin and the MDCPS not find a position for her. At the same time her interim position was eliminated, Ms. Duran automatically became an emergency temporary instructor available for assignment pursuant to Article XIX, Sections 1C and 2B of the Agreement. This is a position commonly referred to as a “substitute teacher.” It is important to note that pursuant to the terms of the Agreement, and as was testified to at the hearing by the representative of the MDCPS, a teach *1178 er whose assignment ends during the course of the school year does not lose his or her job, but rather is automatically placed into the classification of substitute teacher. Therefore, pursuant to the Agreement, Ms. Duran had a position change from a 3100 interim teacher to that of a substitute teacher and served in both capacities during the academic year. Ms. Duran testified at the hearing that she was aware of the change in her classification and also that she subsequently did perform duties as a substitute teacher.
Section 443.091, Florida Statutes (2009), sets forth the conditions for any person who works in an instructional capacity to receive unemployment benefits. Section 443.091(3)(a), concerns the eligibility requirements of such a person to receive unemployment benefits during the summer months between two academic years. The statute states in pertinent part as follows:
Benefits are not payable for services in an instructional .... capacity for an educational institution ... for any week of unemployment commencing during the period between 2 successive academic years ... to any individual, if the individual performs those services in the first of those academic year or terms and there is a contract or reasonable assurance that the individual will perform services in any such capacity for an educational institution ... in the second of those academic years or terms.
Therefore, pursuant to the statute, a person in an instructional capacity may not receive unemployment benefits during the summer months of two academic school years if the person had worked in an instructional capacity during the academic year, and there is a contract or reasonable assurance that the individual will work in any instructional capacity in the immediately following academic year.
The question then is whether Ms. Duran had a reasonable assurance that she would have been employed by the MDCPS in any instructional capacity after the summer months. It is important to note that the statutory requirement is whether she had a reasonable assurance to be placed in any instructional capacity. The testimony at the hearing by the representative of the school board, and the finding of the appeals referee, was that Ms. Duran did have a reasonable assurance, in fact better than a reasonable assurance, of working for the school board in the following academic year as a substitute teacher. The school board was not required to place her in a full-time position. The school board representative testified at the hearing that because Ms. Duran had performed duties as a substitute teacher during the school year, she was automatically active on the substitute teacher list for the next school year. The question was whether at the time of the hearing, which was during the summer months, Ms. Duran had a reasonable assurance of being called back at the beginning of the academic school period as a substitute teacher or in any other instructional capacity. The testimony from the representative of the MDCPS at the hearing was that she did. The statute does not require a guarantee that she will be called back, or a guarantee that she will be called back in the same position. It requires solely a reasonable assurance that she will be called back in any instructional position. The transcript from the hearing, which is part of the record on appeal, contains testimony from the representative of the School Board that there was a reasonable assurance that Ms. Duran would be called back, and the finding was such by the referee. Brown v. Fla. Unemployment Appeals Comm’n, 81 So.3d 646, (Fla. 1st DCA 2012).
Additionally, it does not seem logical that the Collective Bargaining Agreement *1179 hammered out by the United Teachers of Dade and the MDCPS and the Florida statutes are designed such that someone in Ms. Duran’s position would receive unemployment compensation during the summer when such is not available to either a full-time or a part-time employee with the MDCPS.
Our standard of review is whether there is substantial, competent evidence in the record to support the appeal referee’s finding of fact. It is undisputed in the record that Ms. Duran was employed on a temporary basis as a 3100 interim teacher and was reclassified to that of a substitute teacher and served in that position. There is substantial, competent evidence in the transcript of the hearing to support the appeal referee’s finding that she had a reasonable assurance of employment with the MDCPS after the summer break. Therefore, based upon our standard of review, I would affirm the referee’s findings of fact and, as such, his legal conclusion that Ms. Duran is not eligible for unemployment benefits during the summer months pursuant to section 443.091(3)(a), and would affirm the finding of the denial of benefits.